# WHEELING.

CAIN *v.* COX *et als.*

Submitted June 15, 1883—Decided March 22, 1884.

1. If a party obtains a deed without any consideration upon a parol agreement, that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and the general rule, to permit parol evidence to establish such a trust; but if such agreement is reduced to writing and signed by the grantee at the time the deed is executed or afterwards, a court of equity will enforce such trust. (p. 604.)

2. But if the deed was made to delay, hinder and defraud the creditors of the grantor or for any vicious purpose in violation of public policy, a court of equity would not enforce such trust, though the agreement to hold the land on such trust was reduced to writing at the time or afterwards and signed by the grantee; for then the maxim *in pari delicto potior est conditio defendentis* would be applied. (p. 606.)

3. If the grantee in such a deed should convey the land to a purchaser for valuable consideration with notice of this trust, a court of equity would enforce such trust against such purchaser, whenever it would enforce it against the original grantee. (p. 608;

4. But it would not enforce such trust though in writing against a purchaser for valuable consideration without notice of the existence of such trust or of any trust on the land. (p. 608.)

5. One is considered a purchaser for valuable consideration with notice of another's equity, whenever he has such notice of such facts as would put him on enquiry; for the law imputes to a person knowledge of facts, of which the exercise of common prudence and ordinary diligence must have apprised him. (p. 609)

GREEN, JUDGE, furnishes the following statement of the case:

At April rules, 1876, Rezin Cain filed in the circuit court of Ritchie county his bill, in which he states, that on November 1, 1854, he conveyed to his sisters Nancy and Dorinda Cain a parcel of land in Ritchie county, West Virginia, said in the deed to contain one hundred acres more or less, but which really contained one hundred and thirty-six acres; that he afterwards sold to one G. W. Parker this tract of land for his sisters, and he paid for it but had no deed for it but simply a title-bond, and the plaintiff, Rezin Cain, agreed with said Parker to repay him what he had paid for said land, and he took up the title-bond which Parker had; and his said two sisters about the year 1860 entered into a title-bond agreeing to convey to him this tract of land; that the deed however was not executed, but the plaintiff took possession of the land as the owner thereof and held it till the breaking out of the late war; that in the war he took sides with the Confederate government and left his home and went with the Confederate army; that before the breaking out of the war the plaintiff rented this tract of land to a tenant for one year and put him in possession thereof; that this lease expired about the time the war broke out; that he then rented the land to this tenant for a term of years but did not put him in possession, as the plaintiff was, when the re-renting took place, about to leave the State to aid the Confederate government; that on his return to Ritchie county after the war he found such hostility among the people to all persons who had engaged in the revolt against the general government that he concluded to leave the county for a season and he did so; that the title-bond of his sisters to convey this tract of land to him he could not then find,

though he searched for it diligently before he left Ritchie county the second time; that he has never been able to find it and says it has been lost or destroyed; that he could not on his return from the south after the war nor prior to 1873, institute any suit to recover this tract of land or enforce his rights, because he could not take "the suitors' test oath."

He charges that Wm. F. Cox knowing that the plaintiff had the equitable title to this land under this title-bond went to his said two sisters and offered to buy of them this tract of land; that they told him that they had executed this title-bond for the land to the plaintiff, and at first declined to entertain any proposition made by said Cox to buy this land; that this was during the war in 1865, and Cox told his sisters that the plaintiff being a rebel would not be allowed to live in the State or hold any property, and by these fraudulent statements he ultimately prevailed on his sisters to make him a deed for this tract of land.

He states that the deed was dated February 1, 1865, and the consideration named in it is six hundred dollars, which was much less than the value of the land. He alleges that Cox took possession of this land under this deed and refused to surrender it; that plaintiff's sister, Nancy, had died since this deed was made leaving four infant children who with Dorinda Cain and Wm. F. Cox are made defendants in this bill.

He asks that the two adult defendants be required to answer this bill on oath, that a guardian *ad litem* be appointed for the infant defendants and be required to answer the bill, and that the deed from Nancy and Dorinda Cain to Wm. F. Cox be declared to be fraudulent, null and void, and that it be cancelled, and that Dorinda Cain be required to convey to the plaintiff her title in said land, and that the interest of the infant children of Nancy Cain may be conveyed to him by a commissioner appointed by the court, and further asks for general relief.

The bill was sworn to by Rezin Cain.

A guardian *ad litem* was appointed for the infant defendants, who filed an answer for them; and W. F. Cox and Dorinda Cain filed separate answers. W. F. Cox in his answer denies any knowledge of the existence at any time of

the title-bond for said land to the plaintiff named in the bill,
and he says he knows nothing of the plaintiff ever being in
possession of this land under this title-bond nor of his pay-
ment named in the bill to George W. Parker, and of all
these things he calls for proof. He admits that plaintiff went
into Confederate army; but he knows nothing of any hostile
feeling to him on that account on his return after the war to
Ritchie county. He denies obtaining the deed for this tract
of land as stated in the bill, says he had the title to it exam-
ined and found from the clerk's office that the title was in
Nancy and Dorinda Cain, but for fear some trouble might
arise in the premises he in connection with a gentleman
went to these ladies and interrogated them as to the title
and asked, if they had ever conveyed in any way this tract
of land to any one, they said they had not; that he then
bought the land from them; the last payment on it was due
November 1, 1866, and when he paid it Rezin Cain was at
the house of his sisters and knew of the payment but inter-
posed no objection and set up no claim to this land until a
few months before bringing this suit; that when said Rezin
Cain returned after the war to Ritchie county he had a con-
versation with him about respondent's purchase of the land
from his sisters. He did not set up then any claim to the
land but only said he did not give his sisters enough for the
land, and at the same time Rezin Cain proposed to sell to re-
spondent some land he owned adjoining this tract. He says
that the only notice he had of any title of Rezin Cain was
after he, respondent, had bought the tract, obtained a deed
and paid for it in full. He relies on the statute of limitations
and asks that the bill be dismisssed at plaintiff's costs. This
answer is sworn to by Wm. F. Cox.

Dorinda Cain in her answer admits all the material alle-
gations in the bill to be true; and she too swears to her an-
swer. General replications were filed to these answers and
depositions were taken by both sides..

On October 20, 1876, the court entered the following
decree:

"This cause coming on this day to be heard, on the 20th
day of October, 1876, on the summons returned executed,
bill filed, exhibits and the answers of Wm. F. Cox and Dor-

inda Cain, with general replication thereto, as well as the answer of P. W. Morris, guardian *ad litem* of Louisa M. Cain, Elba Silkirk Cain, Okey Johnson Cain, Alice Cain, infant children of Nancy Cain, deceased, with general replication thereto was argued by counsel, upon consideration whereof the court not being advised from the evidence what decree is right and proper doth adjudge, order and decree that this cause be referred to Wm. H. Douglass, one of the commissioners of this court, who is directed to ascertain and report to this court at its next term:

"First.—Whether or not a title bond was executed and delivered by the defendants, Nancy and Dorinda Cain, to the plaintiff, Rezin Cain; and if so, its date, terms and whether or not it embraced the land in controversy in this suit, and whether or not the said title-bond is in existence.

"Second.—Whether the defendant, W. F. Cox, at the time of his purchase of the land in the bill mentioned from the said Nancy and Dorinda Cain, had notice of the existence of said title bond or that there was any outstanding equitable title to said land in the plaintiff.

"Third.—Whether or not, the defendant, Cox, had any knowledge of the purchase by Washington Parker of said Rezin Cain of the land in controversy, or had any knowledge of the delivery of possession of said land by Parker to said plaintiff and the surrender of his title.   And the commissioner is directed to report any other matters deemed pertinent by himself, or required by any of the parties in interest, and leave is given the said commissioner to examine the parties on oath, to take any and further depositions either party may require; and to examine the proofs in this cause in order to enable him to execute this order."

The commissioner made the following report: Your commissioner finds the following facts:

"First.—That there was a paper writing agreement or title bond executed by said Nancy and Dorinda Cain to the plaintiff, Rezin Cain, some time in the year 1860, and that it embraced the land in dispute in this cause.   See depositions of Rezin Cain, Harrison Cain and Dorinda Cain here filed and made part hereof. ·And it appears also from said depositions that said title-bond was destroyed or lost and does not

now exist. But it also appears from the deposition of Dorinda Cain aforesaid that the said title bond was not a *bona fide* sale of said land and that no consideration proper passed or was to pass. Therefore your commissioner is of opinion that by it no title to said land was vested in said Rezin Cain.

"Second.—That at the time of the purchase of said land by the defendant, W. F. Cox, from Nancy and Dorinda Cain, Dorinda Cain in her deposition says in answer to question twenty-two on cross-examination that she and her sister had notified Wm. F. Cox of the existence of a title-bond or paper-writing binding them to convey the land to Rezin Cain. But it appears from the deposition of Wm. F. Fox (page 8) that he had heard a rumor of some kind of an agreement between Rezin Cain and his sisters in relation to conveying the land, and thereupon he went and interrogated the said sisters and they said there had been an agreement, but the same was canceled or destroyed. See also the deposition of John C. Snodgrass (page 12) who deposes and says that he was present when the purchase of said land was negotiated by said Wm. F. Cox and that Nancy and Dorinda Cain said that there was no obligation on the land either verbal or written. The defendant, Wm. F. Cox having asked them whether they had a clear title?

"So that the preponderance of testimony appears to be that the defendant, Wm. F. Cox, had no notice of the execution of a title-bond at the time of his said purchase or that there was any outstanding equitable title in the plaintiff Rezin Cain to the land in controversy in this suit.

"Third—It appears from the bill of complaint filed in this cause that Rezin Cain as the agent of his sisters sold the land in controversy in this case to one G. W Parker, but the bill does not state the date of said sale. It also appears from the deposition of Dorinda Cain that at the date of the said sale to the said Parker of said land in controversy that the title to the same was in said Dorinda and her sister Nancy Cain. See also the deposition of G. W. Parker filed July 20, 1876, confirmatory of the same fact and that the said G. W. Parker never delivered possession of said tract of land to the said Rezin Cain, the plaintiff. See also said deposition of G. W. Parker here referred to, from which deposition it

appears that the defendant, Cox, knew of the purchase by G.
W. Parker of said land in controversy from the plaintiff, Rezin
Cain, only as the agent of Nancy Cain and Dorinda Cain and
could not know of said Parker delivering possession thereof
to Rezin Cain, said Parker testifying that he did not deliver
the possession to any one.

" RECAPITULATION.

" Your commissioner finds and reports as follows:

" First—That there was a paper writing, agreement or title-
bond executed by the said Nancy and Dorinda Cain to the
plaintiff, Rezin, sometime in the year 1860 and that it em-
braced the land in controversy in this cause, the terms of
which, as far as your commissioner can ascertain, are that
there was no consideration, that it was not a *bona fide* sale,
that it was simply the ' signing of the right' of said Dorinda
and Nancy to said Rezin and that the said paper does not
now exist but is destroyed or lost.

" Second—That the defendant, William F. Cox, had no
notice of the existence of a title-bond or any outstanding
equitable title in the plaintiff, Rezin Cain.

" Third—That the defendant, William F. Cox, did know
of the purchase by G. W. Parker of the land in controversy
from Rezin Cain, but only as the agent of the said Nancy
and Dorinda Cain, and that the said Cox could not know of
the said G. W. Parker delivering possession thereof to the
plaintiff for no such possession was ever delivered.

" Respectfully submitted,

"WM. H. DOUGLASS, *Commissioner*."

On a careful examination of the evidence I find the follow-
ing errors in his conclusions as drawn from the evidence:
Of the facts stated in the first paragraph they are sustained
by the evidence except the concluding part of the paragraph:
" But it also appears from the deposition of Dorinda Cain
aforesaid, that the said title-bond was not a *bona fide* sale of
said land, and that no consideration proper passed or was to
pass. Therefore your commissioner is of opinion that by it
no title to said land was vested in said Rezin Cain." On
this subject the evidence proves that the deed dated Novem-
ber 1, 1854, filed with the bill was executed by Rezin Cain

to his sisters simply to convey to them the legal title to this
tract of land, which belonged to him, and that he was to be
regarded as the equitable owner of this land, and that they
would convey it to any one he directed or to himself when
he desired it; that this was a mere parol understanding, and
the title-bond referred to by the commissioner was executed
by his sisters to him to furnish him written evidence of this
verbal understanding; and it was executed to him by them
in good faith; and that it made good the equitable title of
Rezin Cain to this tract of land.

In reference to the facts stated in the second paragraph,
while he states all the evidence on behalf of the defendant on
this question of whether the defendant, Cox, had notice of
the plaintiff's claim to this land, yet he states none of
the evidence for the plaintiff on this point excepting only
the evidence of Dorinda Cain. There was much other
evidence strongly corroborating the evidence of Dorinda
Cain on this point. The conclusion I draw from all the evi-
dence on this point is just the reverse of what the commis-
sioner in his report draws. My conclusion is that the evi-
dence shows clearly, that Cox had constructive if not actual
notice of the equitable title of Cain to this tract and of the
execution to him by his sisters of this title-bond, and that it
had not been cancelled with the consent of Cain but had
been simply lost or destroyed during the war.

The third paragraph of facts by the commissioners is
erroneous in this, that the deposition of G. W. Parker dis-
tinctly shows that he purchased this tract of land of Rezin
Cain individually and not as agent of his sisters, and that the
defendant Cox knew this, and when the title-bond which was
cancelled by consent of Parker and Rezin Cain, the defend-
ant Cox ought to have known, that the possession of this
land when surrendered by Parker would return, as it
actually did, to the plaintiff Rezin Cain and not to his
sisters, who held only the legal title.

In the recapitulation the commissioner makes the errors
we have above pointed out. His third conclusion is not
supported by the evidence. The defendant Cox knew, that
Parker had bought this tract of land of Rezin Cain not as the
commissioners say "only as the agent of his sisters Nancy

and Dorinda Cain," but of Rezin Cain individually. It is true no formal possession was delivered of this land by Parker to Cain; but Parker surrendered his contract and thereupon the person, of whom Parker had purchased, Rezin Cain, took possession of the land and the defendant Cox, who lived within a mile of it and had ten acres of land almost adjoining it, knew this.

The commissioner's report was excepted to by Rezin Cain, "because it was not warranted or sustained by the evidence but was in conflict with the same and contrary thereto." As I think this exception is well sustained by the proof, I will in the opinion give more in detail the facts proven to show clearly that this report is not sustained by the evidence.

On the — day of April, 1877, the circuit court of Ritchie entered the following final decree in the cause: "This cause coming on this day to be heard upon the bill, exhibits, proofs in the cause, answers of defendants Cox and Dorinda Cain, with a general replication thereto, the answer of P. W. Morris, guardian *ad litem* of the infant defendants, Louisa M. Cain, Elba Silkirk Cain, Okey Johnson Cain and Alice Cain, with the general replication thereto on the report of commissioner Wm. H. Douglass, to whom this cause was referred, and the exceptions thereto, on consideration whereof the court is of the opinion that the exception endorsed upon said report is not well taken. It is therefore adjudged, ordered and decreed that the said exception be and therefore the same is overruled, and the court is further of the opinion that the plaintiff is not entitled to the relief prayed for. It is therefore adjudged, ordered and decreed that the bill of complainant be dismissed, and that the defendant recover of the plaintiff their costs in this behalf expended."

Plaintiff, Rezin Cain, obtained an appeal from and a *supersedeas* to this final decree.

*Robert White* and *R. S. Brown* for the appellant.

*R. F. Blair* for appellee.

GREEN, JUDGE:

The first enquiry is: What is the effect and operation of

the deed made November *first*, 1854, which on its face professes to convey to the sisters of Rezin Cain the tract of land in controversy in consideration of three hundred and fifty dollars? It was executed by Rezin Cain the day it bears date and acknowledged and duly recorded the same day. On its face it purports to be a conveyance of this tract of land for a valuable consideration; but the evidence proves, that it was a conveyance really without consideration and upon a parol trust, that the grantor, Rezin Cain, should remain the owner of the tract of land, and that his sisters would reconvey it to him or to such person as he might direct, whenever requested by him so to do. This is shown by the deposition of the only one of the grantees now living, Dorinda Cain, who states, that they never paid him anything for the land, and when he wanted it, they signed a title-bond to convey the land to him without any consideration. This evidence on her part we might well be disposed to doubt, if it was not strongly corroborated by the other evidence in the cause and by undisputed facts. In corroboration of it, after this deed was made to his sisters, Rezin Cain continued to act as though he were the sole owner of the land. Thus G. W. Parker proves that in the fall of 1857, three years after this deed was made to his sisters, Rezin Cain traded this tract of land containing about one hundred and thirty acres together with about sixty acres of land standing in his own name for another tract of land belonging to Parker and estimated to be worth four hundred and fifty dollars; and he, Parker, executed to Rezin Cain his bonds for the difference in the value of the land, five hundred and ninety-five dollars, payable in three equal payments. This land was sold by Rezin Cain as his own land and the purchaser bought it as his, not knowing that the legal title to the land was in his sisters. The title-bond or contract between Rezin Cain and Parker was executed by Cain, and Parker did not for a very considerable time know that the legal title to this land was in his sisters; and he then saw them, and they said they would convey the land to him. But his contract being with Rezin Cain only, he thought he might have trouble about getting the title, and on the suggestion of Rezin Cain, about the time the last of Parker's purchase-money-bonds became

due, he agreed with Rezin Cain to cancel their contract, and it was done. This was done by Rezin Cain re-conveying to Parker the land of Parker, which Rezin Cain had got in the original trade, and also by his conveying to Parker certain land, which Cain had purchased with the bonds, which Parker had executed to him; and in this cancellation of this contract of sale Cain by one of the terms of the agreement of cancellation conveyed to the defendant, Cox, ten acres of the one hundred and ninety acres which Parker had bought of him, this ten acres being a portion of the sixty acres, the legal title to which was in Rezin Cain it being a part of the one hundred and ninety acres.

Shortly after the cancellation of the contract of sale with Parker the sisters of Cain executed a title-bond agreeing to convey the tract of one hundred and thirty acres of land to Rezin Cain. The surviving sister testifies, that there was no consideration for this bond. "We did not," she says, "want any money of him but just assigned our interest back to him, that he might have his land." This is believed to be true, not simply because she testifies to it, but also because her evidence as to the re-conveyance is abundantly proven independently of her statement and because it abundantly appears from the facts and circumstances of the case that they really received no consideration. The person who drew this bond states, that there was some consideration mentioned in the bond; but the receipt of the consideration was also mentioned in the bond. In this respect it was just like the deed made by Rezin Cain to his sisters. A consideration was named in it but its receipt in full was acknowledged. The contents of the title-bond were proven by the person who wrote it to be that the sisters were to convey to Rezin Cain this one hundred and thirty acres of land. He also states that it was left with him and lost or destroyed with other papers of his during the war. After this title-bond was given, Rezin Cain had possession of the land till the war broke out, when he went south.

In this state of facts what was the operation and effect of this deed of 1854, whereby Rezin Cain conveyed this tract of land to his sisters upon a parol trust for his own use? In *Troll* v. *Carter*, 15 W. Va. 578, this Court decided: "If

land be conveyed by a deed of bargain and sale for a merely nominal consideration, the courts of equity will not receive *parol* evidence to prove that the grantee agreed to hold the land for the grantor's use, as the deed in such a case must have been made for the express purpose of divesting the grantor of his title and vesting the same in the grantee. Such *parol* evidence, if admitted, would defeat the very purpose, for which the deed was made, and must be regarded as contradicting the deed, and the general rule of evidence requires in such case the rejection of such parol evidence. See *Philbrook* v. *Delano*, 29 Me. 410; *Rathbun* v. *Rathbun*, 6 Barb. 98; *Graves* v. *Graves*, (9 Foster) 29 N. H. 129; *Blodgett* v. *Hildreth*, 103 Mass. 484." This decision has since been followed in *Zane* v. *Fink*, 18 W. Va. 755, and *Pusey* v. *Gardner*, 21 W. Va. 474. These decisions show clearly that Rezin Cain could not have enforced a conveyance of this tract of land to him because of the parol understanding that the grantees were to hold the legal title for him.

But after they executed to him a bond, whereby they agreed to convey this tract of land to him, could he in a court of equity have enforced the bond? If this written obligation was signed by them, when the deed conveying to them the legal title to the land was executed by him, it is obvious, that he could enforce in a court of equity the conveyance of the land to him in accordance with their written obligation; for the only reason why he could not do it in the absence of this written obligation, is that he would have to resort to *parol* evidence to prove their agreement, which he could not do on the principle that if the parties reduce their contract to writing, as is done by the deed, it cannot be explained or contradicted by *parol* proof, but there would be no violation of this rule, if there was a written obligation by them to convey this tract of land to him; and it would seem to be equally obvious, if, as in the case before us, the grantees signed subsequently a written obligation to re-convey the land to him. As no fraud could be practiced by him by the introduction of false proof, I can see no reason why in such a case a court of equity would not compel them to carry out the original understanding, after it was reduced to writing and signed by them. This is all of course based on the sup-

position that he did not originally execute the deed to his sisters for the purpose of delaying, hindering or defrauding his creditors or for any other vicious object, which was contrary to public policy. If he did, upon the authority of the case of *Horn* v. *Star Foundry Company, supra,* the courts would doubtless refuse to enforce this title-bond or written agreement on the principle *in pari delicto potior est conditio defendentis.*

The next inquiry then is: Was the deed of this tract of land to his sisters made by the plaintiff to delay, hinder or defraud his creditors or for any other vicious object? There is no evidence in the cause to show why he in 1854 conveyed the legal title of this tract of land to his sisters. He is asked no question on this subject, and in his deposition says not a word about it. His surviving sister, Dorinda Cain, is the only other living party to this transaction, and she on cross-examination simply says in her answer to the following question by the counsel of defendant Cox: "How much money did you originally pay him for the land?" "We never paid him anything; and when he wished the land back, we assigned our interest over to him," which, as I understand it means that Rezin Cain's sisters paid him nothing for this land which he deeded to them in 1854 and he paid them nothing, when they executed in 1860 the title-bond binding them to convey the land to him. And this, for the reasons I have stated, I believe to be strictly true. There is not a particle of proof that he had in 1854 or at any time before or since any creditors to delay, or that in 1860 or at any time before or since his sisters had any creditors to delay, hinder or defraud by the execution of the title-bond. Nor is there any allegation in the pleadings, that this deed of 1854 or this title-bond was made to delay, hinder or defraud creditors or for any vicious object. Not a word is said in the bill or answer about the consideration or whether there was any consideration for the deed. All he says in the bill about the consideration of the title-bond is that "he purchased the land of his sisters and took this title-bond; that he had sold said land to G. W. Parker for his sisters and paid for said land, and after the execution of said title-bond to him by his sisters, he paid Parker his money back." This is a

very obscure statement of the transaction. The inference perhaps might be drawn from it, that Parker paid money to Cain's sisters for this land and that he paid it back to Parker, when the contract for the sale with Parker was cancelled, and thus his sisters received a consideration for the title-bond they gave him for this tract. But it is stated so obscurely, that, when we look at the evidence, we may well doubt, whether this was his meaning. He says Parker paid for this land, but he does not say to his sisters. In fact the proof shows he paid the consideration to him Rezin Cain and not to his sisters; and the payment was not, as we might infer, in money but in other lands conveyed to Rezin Cain. And this he paid back to Parker by re-conveying to him the land, and the title-bond to Parker was cancelled. Of course his sisters got no consideration for the execution of this title-bond to Rezin Cain; and the only survivor of these sisters in her deposition so states.

In his deposition Rezin Cain does not state that he paid any consideration for the execution of this title-bond to him by his sisters. So that there is scarcely anything in the pleadings to indicate, why this deed of 1854 was executed, or why the title-bond of 1860 was given. Dorinda Cain in her answer does state, that she and her sister did receive the benefit of the amount paid to Parker by Rezin Cain. But how is not stated; and in another part of her deposition she states, that they received no benefit of the amount paid to Parker. Though there is this descrepancy between the pleadings and the proof, and though the deed on its face does say that the consideration for the land was three hundred and fifty dollars, and though the title-bond does say, that it was made for a valuable consideration, which had been paid, still, it does seem to me, it would be an unwarrantable inference for a court to hold on this evidence only, that the deed of 1854 or the title-bond of 1860 was made to delay, hinder or defraud creditors or for any vicious object, as there is no proof that there were any creditors to delay, hinder or defraud, and no other vicious object is any way shown or even suggested by pleadings or proof. We may conceive of many honest reasons why a man should convey his land to another to hold for his use; and in the absence of all proof

to the contrary we must conclude, that the parties to these two transactions were actuated by honest rather than dishonest motives. We cannot from such evidence infer fraud in the absence of all other circumstances or proof to indicate any fraud.

For these reasons I think that Rezin Cain had a right to have specifically enforced against his sisters the performance of the obligation imposed on them by this title-bond by asking a court of equity to compel them to convey to him this tract of land. This title-bond cannot be properly regarded as voluntarily executed by his sisters without any consideration. They held the legal title of this tract of land; but they held it in trust for Rezin Cain. It is true that as he had nothing but parol proof to show this trust, and he had executed the deed conveying the legal title to them, he could not, till they executed this title-bond, have compelled a performance of this trust; not because it was not both legal and proper for them to perform it, but only because he had no legal proof of it. The title-bond then should be regarded legally not as a sale of the land to him nor as a voluntary agreement on their part to convey it, but as a furnishing by them to him of proof in the legal form of the existence of this trust. And this legal proof being furnished to him he had thereafter a right to enforce in a court of equity the performance of this trust by a re-conveyance of the land to him. But they having the legal title, it is obvious, that; if they sold it and conveyed it to a *bona fide* purchaser for a valuable consideration, and he paid the purchase-money and got a deed for this tract of land from them, before he had any notice, that Rezin Cain had the equitable title, such purchaser would get a perfect title to this tract of land, and that in his hands it would be discharged of any equity in favor of Rezin Cain. Such purchaser could not of course be by Rezin Cain enforced in a court of equity to convey this tract of land to him.

Wm. F. Cox claims, that he is such *bona fide* purchaser without any notice of Rezin Cain's claiming to have an equitable title. This claim is distinctly asserted in his answer. Is it true or not? The evidence in favor of this claim seems to me to be exceedingly weak, when we consider what is re-

garded as notice of another's claim to one claiming to be a
*bona fide* purchaser without notice.    In the first place, to
sustain this position, the party must be a complete purchaser.
(*Boswell* v. *Buchanan's Ex'or*, 3 Leigh 395.)   This, the de-
fendant, Cox, in his answer claims, was the fact in his case.
To determine whether or not this be true, we must consider
what constitutes notice in such cases.   It is well settled, that
notice is any knowledge however acquired, which is sufficient
to put a party on enquiry; for the law imputes a personal
knowledge of a fact, of which the exercise of common pru-
dence and ordinary diligence would have apprised him.   If
the notice is of this character only, it is called constructive
notice, but it is as binding on a purchaser, as if he had actual
personal notice of all of which a diligent enquiry would have
informed him, if he had knowledge of such facts as would
put him upon enquiries.   (*French* v. *Loyal Land Company*,
5 Leigh 627, especially Judge Cabell's opinion from 655 to
657, *Booth et al.* v. *Barnum et al.*, 9 Conn. 286.)   Judge Dag-
gett on page 290 of the last case says : "It is now considered
everywhere that the settled doctrine in equity is that what is
considered as sufficient to put a person upon enquiry is con-
sidered as conveying notice; for the law imputes to a person
knowledge of a fact, of which the exercise of common pru-
dence and ordinary diligence must have apprised him.
*Peters* v. *Goodrich*, 3 Conn. R. 146; *Sigourney* v. *Munn*, 7
Conn. R. 333." See also *Hiern* v. *Mill*, 13 Ves. 121, and *At-
torney General* v. *Life Insurance Company*, 9 Paige 470.

This being the nature of the notice which must be proven
in order to deprive a purchaser *from occupying* the position
of a *bona fide* purchaser without notice, the evidence of the
defendant, Cox, relied upon by his counsel as proving that
he had no notice of the equitable claim of Rezin Cain, in-
stead of proving this proves the contrary.   The witnesses of
the defendant, Cox, even if we rejected the evidence of the
plaintiff's witnesses would prove that he had notice of the
claim of Rezin Cain, and that he, Cox, was not a *bona fide*
purchaser *of this tract* of the land without notice. In his dep-
osition the defendant states, that "the only notice he ever had
before purchasing was from one of his relations, who told
him he had heard that Rezin Cain had some kind of an agree-

ment or obligation from his sisters about conveying this land. He went to the sisters and told them what he had heard and then interrogated them in relation thereto, Rezin Cain being then in the Southern Confederacy. They said there had been an agreement, but it had been cancelled and destroyed. He then went to the recorder's office and found their statement correct as nothing was found there."

This is his whole statement on the subject. And it does seem to me it proves he had notice of the equitable claim of Rezin Cain. It is true according to his statement it was but constructive notice. But we have seen that constructive notice is as binding on him as actual notice. Having the notice, which he confesses, it was obviously sufficient to put him upon enquiry. It did in fact, he says, put him on enquiry. But did he prosecute this inquiry in a manner, which was dictated by common prudence? Did he prosecute it with ordinary diligence? It seems to me according to his own statement he did not. Were not the sisters, of whom he enquired, parties, who had a direct interest in not disclosing to him the equity of their brother in this land? He was proposing to purchase this land of them and to pay to them the purchase-money. Could he as a man of common prudence expect them to tell him that they had no right to sell the land as their brother had an equitable title to it? Certainly not. But did he according to his own statement prosecute this enquiry of the sisters with ordinary diligence? Clearly not. He was content with a general statement from them according to his own account of the matter that this agreement had been cancelled or destroyed. Would not any man of common prudence intending to act in good faith have enquired, whether this agreement had been cancelled and destroyed with the consent of the brother Rezin Cain? Cox knew Cain was in the Confederate States; and this of itself would with any prudent man desiring to do right at once have raised the suspicion that this agreement had been cancelled and destroyed without his consent or knowledge; and any man of common prudence acting *bona fide* would certainly have enquired when and how this agreement had been cancelled and destroyed—whether with or without the consent of Rezin Cain, or accidentally. But it

seems according to his own statement that he did not make these natural enquiries. The inference is that he did not do so, because acting *mala fide* he feared that a prosecution of this enquiry would disclose the fact, that despite this cancellation and destruction of this agreement Rezin Cain still had an equitable title to this tract of land. He contented himself with this imperfect enquiry of parties, who he had no right to expect to disclose the truth, especially when he did not make his enquiries in a manner calculated to elicit from them the whole truth. Having got this imperfect information from this unreliable source he contented himself with an examination of the records in the clerk's office. He had no right to expect, that they would disclose the equitable title of Rezin Cain, and the fact that they did not in no degree showed, that Rezin Cain had not the equitable title, which Cox had been told he had. This he must have known. It did not even, as he says in his deposition, show that the statements of the sisters were correct, much less does it show that they had told him the whole truth.

Cox attempts to fortify his statement by a witness Snodgrass, who, he states, was present at this interview with the sisters. Snodgrass says: "Mr. Cox having asked them whether they had a clear title to this land, they said there was no obligation on the land either verbal or written; he did not remember hearing them tell Cox that the obligation between them and Rezin Cain had been destroyed or canceled." This is far from a corroboration of Cox's statement of what occurred in this interview. But if it were just as Snodgrass states, it would not vary the case; for, as Cox expressly admits, he had heard that Rezin Cain had an obligation of his sisters to convey this tract of land to him. His want of common prudence was still more marked, if Snodgrass's statement is correct; for having heard this he made no special enquiry if it were true, but contented himself with a general enquiry as to whether the title was good, an enquiry, to which, as we have seen, he had no right to expect a correct answer, as it was made by parties interested to represent their title as good. Obviously according to the statement of Snodgrass he did not prosecute the enquiry, which he was bound to make, with common prudence or

ordinary diligence, as any man in his circumstances, whó was acting *bona fide*, would have done.

This is all the testimony Cox relics on to prove, that he had no notice of the equitable title of Rezin Cain, when he purchased, and ,it seems to me it proves the reverse. But the testimony of the plaintiff's witnesses shows, that Cox, before he purchased this ·tract of land' of these sis-.ters, knew· positively · that Rezin Cain had an ·equitable title to this tract of land, and that his purchase was *mala fide.* This .is proven by Dorinda Cain the surviving sister, one of the parties of whom Cox purchased. The sisters, she testifies, told him that they had executed a bond to their brother to convey this land to him; but as it was likely he would never come back he having gone into the army of the Confederate States, and even if he did, his rights would be disregarded, as he was a rebel, they were willing to sell the land to the' defendant, Cox, if he chose to purchase it ·with this knowledge of Cain's equitable title. He chose to do so with his eyes open relying on the expectation that Rezin Cain would make no disturbance about it, or, if he did, then on the covenant of warranty of the sisters, as far as it would go. This statement is very much corroborated by the other testimony and facts in the cause.

George W. Parker, who at one time held and occupied this land under a purchase from Rezin Cain, testifies, that in a. conversation with the defendant, Cox, he, Cox, said: "Before he purchased the land, he made enquiry of these sisters in regard to their title to this land and asked them, if they had conveyed the land to any one, or if they had any papers out binding them to make a title to any one for said land, and they said, they had given Rezin Cain a title-bond for said land, but the papers were lost or destroyed." This, I have no doubt, is the real truth, and Cox in his testimony·has changed what these sisters said to him, that this title-bond was lost or destroyed, into that it was "cancelled and destroyed." Cox knew perfectly well, when he purchased, that Rezin Cain had an equitable title to this tract of land, but as the paper showing it was lost or destroyed, and Rezin Cain was in the Confederate army, he deliberately took the risk of purchasing this tract of land from those, who had the legal title, well

knowing the equitable title was outstanding. In fact he knew of the existence of a claim to the ownership of this tract of land by Rezin Cain for many years prior to his purchase of it of his sisters. Parker had purchased this land of Rezin Cain individually and held it for nearly three years, and the defendant, Cox, lived within a mile of it, and by the testimony of both Parker and Cox it appears, that he knew that Parker had purchased this tract of land of Rezin Cain individually, and indeed he could hardly have avoided knowing this, as he bought of Parker ten acres of land included in Rezin Cain's sale to Parker, not a part of the land in dispute, and getting his title under this purchase from Parker, who purchased from Cain, it would seem he could hardly help knowing, that Parker bought of Rezin Cain; and Parker says, that he did know it. And knowing it he knew as far back as 1860 that Rezin Cain claimed some title to this land, and as he knew the records showed the legal title to be in his sisters, he must have known years before he bought of the sisters, that their brother, Rezin Cain, claimed an equitable title to this land, which he was bound to make enquiry into before buying the land. He had in this way sufficient notice to bind him.

Rezin Cain also proves admissions of Cox, that he had, when he purchased, notice of his equitable claims. The fact, that Rezin Cain and Parker as a purchaser from him had possession of this tract of land for years, would itself go far to prove that Cox had notice, that Cain had some claim to it. But as he or those claiming under him had not been in possession for several years, when Cox made his purchase this would not by itself be conclusive evidence of notice. See *Campbell* v. *Fetterman's Heirs*, 20 W. Va. 398. My conclusion therefore is, that Wm. F. Cox unquestionably had constructive, if not actual, notice that the equitable title to this land was in Rezin Cain when he purchased it of his sisters; and that in making this purchase he acted in *bad faith*.

It is well settled that one, who takes a deed with notice that the equitable title is in another by a fair contract of sale or in any other manner, must stand in the shoes of his vendor and may be compelled to do whatever would be obligatory on the vendor, if the legal title had remained in him,

See *Smoot et al.* v. *Rea & Andrews*, 19 Md. 398. It would follow then, that the plaintiff, Rezin Cain, is entitled to a conveyance of this tract of land.

But it is insisted that he is barred of his relief by the statute of limitations. The statute of limitations has no application in such a case; but if it had, it is obvious, that it would not be applied in this particular case, because there is no doubt that the plaintiff could not take the oath prescribed by section 27 chapter 106 of Code of West Va. usually known as the test-oath; and chapter 28 of Acts of 1872–73 provides that in computing the time, within which any civil suit can be brought by a person, who could not take this oath, the period from February 28, 1865, to February 6, 1873, shall be excluded. Excluding this time this suit was brought within less than three years and three months after the cause of action accrued. It could not have been brought by virtue of this test-oath-act more than three years and three months before it was brought.

It is claimed that the plaintiff Rezin Cain by his conduct and declarations abandoned his claim, while he was thus barred from bringing suit. But the acts and declarations relied on as abandonment of his claim are only proven by the defendant Cox, and they are denied by the plaintiff Cain, who in his depositions says: "In the summer of 1867 I went to Wm. F. Cox's house and told him, that that land belonged to me, but I was not able to do anything at that time, but perhaps there would be a time when I could," being under disability on account of suitors' test-oath. This is denied by Cox, and may or may not be true. But be this as it may, there is no proof in the case, which can be relied upon, that shows any abandonment or surrender of the plaintiff's claim to this land. Even if he set up no claim to the land by word or act, while this test-oath-act was in force, no inference to his prejudice could be thence drawn. It was idle for him by word or act to be setting up a claim to the land, while the law of the land would not let him enforce his claim by any suit. It might be perhaps regarded as worse than useless. It may well be considered, that such conduct on his part would have been actually foolish, as it could do no possible good and might stir up ill-will against him in a

community which already regarded him as a rebel, and might have led to his persecution.

The circuit court ought not to have entered the decree of October 20, 1876, as the matters referred to the commissioner are matters to be determined upon the depositions in the cause and are all of such a nature, that the report of a commissioner could be of no aid to the court, who could not decide them properly without reading himself and carefully considering the depositions. The exception to this report by the plaintiff was well taken and should have been sustained.

I have said that the title-bond executed by Rezin Cain's sisters to him was executed in good faith and the specific performance of it should be enforced; but I failed to refer to a question propounded to Dorinda Cain on cross-examination and her answer to it, which may perhaps have had much influence with the commissioner and with the court below in reaching a contrary conclusion. The question referred to the giving of this title-bond by the sisters to Rezin Cain and was: "It was not a *bona fide* sale, but a mere trade for the time being." The answer was: "It was a mere trade for the time being and not a *bona fide* sale." I confess that the question is entirely unintelligible to me, for there is not a particle of evidence or pretence that there was any sort of trade of land between Rezin Cain and his sisters either for the time being or permanently. Not comprehending the question the witness by her answer simply assented to what was stated in the question. But that she did not mean to say that there was any trade of land, or that the title-bond was not made *bona fide* abundantly appears in the balance of her deposition. I suppose she did not understand what was meant by a *bona fide* sale. I suppose she must have meant by saying it was not a *bona fide* sale, that it was not a *sale* in the ordinary sense of the word. And her evidence shows, that it was not. It was, as she afterwards states, a mere agreement to convey to him land, which belonged to him, but the legal title of which was in them. This she says was not a *bona fide* sale, that is, was not a common sale. But the character of the transaction whether *bona fide* or not is to be judged of not by her ideas of what is *bona fide*, but upon the actual facts proven in the case.

In *Buckle* v. *Mitchell*, 18 Ves. 100, the court held, that " voluntary settlements though free from actual fraud are void against a subsequent purchaser for valuable consideration with notice." I need not enquire whether the law is correctly laid down in this case or not; for the law as laid down in it has no application to the case before us, as the sisters of Rezin Cain did not agree to give him this tract of land. What they did was simply to sign an agreement, the legal effect of which was to declare, that they held the legal title of this tract for him, a fact, which had existed for six years, but of which there had been nothing but parol evidence before that. But if we were to confine ourselves to the written evidence, which we ought not to do, this law laid down in *Buckle* v. *Mitchell*, 18 Ves. 100, would still have no application to this case. The deed of 1854 on its face would indicate that Rezin Cain's sisters had bought this tract of land or him and owned it. But on the other hand the title-bond of 1860 would on its face indicate, that he had bought this land again of them and paid them for it. So that looking only to the face of the papers there was no voluntary gift. In fact the face of the papers imported no voluntary gift, and the parol proof showed in point of fact there was none, and of course the doctrine laid down in *Buckle* v. *Mitchell*, 18 Ves. 100, can have no application.

As the circuit court ought to have decreed, that a conveyance should be made of this tract of land in controversy to Rezin Cain, it is obvious, that he is entitled to the rents and profits of the land from the time the defendant Wm. F. Cox took possession of it, which was, I presume, February 1, 1865, the date of the deed to him. Cain has a right to recover all the rents and profits of the land for all the time it has been wrongfully held by Cox, though this time greatly exceeded five years, because during all that time prior to the institution of this suit except about three years and three months the suitor's test-oath was in force, and the plaintiff had, while it was in force, no right to recover these rents and profits. But in ascertaining these rents and profits Cox should be allowed to offset against them any taxes he has paid on the land and the value of any permanent improvements he may have put upon it.

I am therefore of opinion, that the final decree rendered by the circuit court of Ritchie in April, 1877, should be set aside, reversed and annulled; and the appellant should recover of the appellee, Wm. F. Cox, his costs in this Court expended; that the exception to the report of commissioner Douglass filed by the plaintiff should be sustained, and said report set aside entirely and disregarded by the court; and that it should be adjudged that the plaintiff, Rezin Cain, is entitled to have conveyed to him by a commissioner of the circuit court of Ritchie county the tract of land in the bill mentioned and all the right, title and interest of all the defendants in this cause including Wm. F. Cox and the infant defendants to said tract of land; and that a writ of possession should be awarded to Rezin F. Cain by said circuit court to put him in possession of said tract of land; and this cause should be referred to a commissioner of the circuit court of Ritchie county to ascertain the rents and profits of said tract of land since it has been in possession of the defendant, Wm. F. Cox, and also the amount of taxes he has paid upon it and the value of the permanent improvements which he has put upon the same; and that this cause should be remanded to the circuit court of Ritchie to enter a decree which shall carry into execution the matters herein adjudged and with directions that said circuit court of Ritchie should further proceed with this cause according to the principles laid down in this opinion and further according to the principles governing courts of equity.

REVERSED.   REMANDED.