KELLY SPRINGFIELD TIRE COMPANY ET AL. v. W. P. LESTER AND FLORENCE LESTER, HIS WIFE.

(Filed 8 December, 1926.)

**1. Trusts—Deeds and Conveyances — Resulting Trusts — Husband and Wife—Statutes.**

When a deed from a husband to his wife is sought to be set aside by his creditors for fraud, C. S., 1005, 1007, evidence tending to show that she had a resulting trust by reason of her having conveyed the same land to her husband without consideration moving to her, is inadmissible under the principle that a grantor in a deed to lands may not engraft a resulting trust upon his conveyance of the fee-simple title with full covenants and warranty of title.

**2. Same—Evidence—Burden of Proof.**

It is upon the one seeking to engraft a parol trust in his own favor upon a conveyance of the fee-simple title when permissible to establish his right by clear, strong and convincing proof.

**3. Conflict of Laws—Lex Loci Forum—Evidence—Burden of Proof—Statutes.**

Where a party to an action contends that the law of the forum in another state controls the disposition of the issues involved, he is required to show statute or written law or controlling decisions thereon, or such facts as would make the laws of that state applicable. C. S., 1749.

APPEAL by plaintiffs from *Daniels, J.,* at April Term, 1926, of HOKE. Former appeal reported in 190 N. C., 44. New trial.

Action in the nature of a creditors' bill to set aside a deed executed by the defendant, W. P. Lester, to his wife.

The verdict was as follows:

1. Was the deed from W. P. Lester to his wife, Florence Lester, made in consideration of a preëxisting debt?

Answer: No.

2. Is there a resulting trust in the said land in favor of the defendant, Florence Lester, as alleged in the answer?

Answer: Yes.

3. If so, in what interest in the said land?

Answer: One-half undivided interest in McNair land.

Judgment for the defendants. Exceptions and appeal by the plaintiffs.

*H. W. B. Whitley and J. W. Currie for plaintiffs.*
*G. B. Rowland and Smith & McQueen for defendants.*

ADAMS, J. The object of the action is to set aside a deed executed by the defendant, W. P. Lester, to his wife, codefendant, on 18 March,

1922, purporting to convey a tract of land situated in Hoke County. The plaintiffs are creditors of W. P. Lester. They allege that he is indebted to the Tire Company in the sum of $579.19 for goods sold and delivered and to Frank E. Walker on promissory notes aggregating more than $6,000; that he conveyed land to his wife with intent to hinder, delay and defraud his creditors; that he is insolvent and at the time of the conveyance did not retain property sufficient and available for the satisfaction of his creditors. C. S., 1005, 1007. The principal defense is that the deed was executed for the purpose of conveying to Mrs. Lester her interest in land which McNair had conveyed to W. P. Lester for her benefit.

The testimony of the defendants is neither clear nor satisfactory. Its tenor is this: W. P. Lester acquired certain interests in his father's estate and thereby became the owner of 170 acres of land in Marlboro County, South Carolina. On 15 January, 1889, he conveyed this land to L. P. McLaurin for the recited consideration of $3,288.82; McLaurin forthwith conveyed it to Mrs. Lester, reciting the same consideration; and as a part of the transaction Mrs. Lester immediately executed and delivered to McLaurin a mortgage on the land to secure an indebtedness of $2,525. On 20 December, 1898, she executed another mortgage on the land to secure an indebtedness of $1,618.91 for money lent her by Asenath Ellen and Ann Eliza Lester, sisters of the male defendant; and on 11 November, 1910, she conveyed to her husband with full covenants of warranty the 170-acre tract in Marlboro in consideration of "one dollar and affection." The defendants jointly conveyed this land to James A. Stanton on 1 January, 1918, for $34,000, and in November, 1917, W. P. Lester purchased the land in controversy, 190 acres in Hoke County, from J. M. McNair at the price of $19,000. On 18 March, 1922, W. P. Lester conveyed the McNair land to his wife, who at that time paid neither money nor any other consideration.

There is evidence tending to show that W. P. Lester borrowed money with which to pay for the interests he bought in his father's land; that McLaurin furnished this money through E. D. McCall, and that the deed from Lester to McLaurin, the deed from McLaurin to Mrs. Lester, and her mortgage to McLaurin were executed for the purpose of obtaining and securing this loan. It is also in evidence that the remainder due on the McLaurin mortgage was paid by Mrs. Lester with money lent her by her husband's sisters and secured by her mortgage to them dated 20 December, 1898. W. P. Lester testified that in payment of the mortgage held by his sisters he applied $1,180 which his wife had let him have out of her separate estate in addition to other sums she had turned over to him from time to time; and Mrs. Lester said that

she let her husband have the money in 1909 "to help pay off the mortgage against the 170-acre tract, and that is what I meant when I said I put it in the land." This money, then, was received and applied by W. P. Lester before he left South Carolina and before he bought the McNair land; consequently a material question is whether any part of Mrs. Lester's separate estate was used in the purchase of the land conveyed by McNair to Lester in November, 1917.

It is important to remember that her deed to her husband bears date 11 November, 1910. There was testimony that at this time the mortgages had been paid and that she owned the Marlboro land in fee. Evidence was admitted subject to the plaintiff's exception that the purpose of this deed was to enable W. P. Lester "to manage as he saw fit." "We were speaking," said Mrs. Lester, "of selling and I thought any time it come up he would know just what to do, you know, and that it would be better to do it then"; subject to exception evidence also was admitted that the deed was executed "so that he could sell."

No question is made as to the validity of the deed from Mrs. Lester to her husband or that it conveyed the fee. The plaintiff excepts to the evidence for the reason that the only object, and certainly the effect, is to engraft upon the deed a parol trust in favor of the grantor. The implication is that W. P. Lester was "to manage" or "to sell" the land for the benefit of Mrs. Lester. This is indicated not only by the evidence but by the instructions given the jury. After charging that the jury should determine whether a resulting trust attached to the conveyance made by McNair to Lester, his Honor used this language: "Now, the question you are to consider is this, did Mr. and Mrs. Lester agree at the time the deed of November, 1910, was made by Mrs. Lester to Mr. Lester that he should sell the property for her benefit? If you are satisfied, gentlemen of the jury, by evidence strong, clear, cogent and convincing, that they did so agree, then the proceeds of the sale of the South Carolina land would be the money or property of Mrs. Lester, and if it was invested as it is admitted, I believe, on all sides, if it was paid as the purchase price of the McNair land, and the land was conveyed to Mr. Lester, then there would be a resulting trust in favor, a resulting trust in the land, in favor of Mrs. Lester, and there would be a resulting trust as to the whole interest in the land except for the fact that she claims only a resulting trust in a half interest in it. If you are not satisfied by the degree of proof that I have mentioned to you of the truth of Mrs. Lester's contention, you will answer this second issue No, but if you are satisfied of the truth of her contention by strong, cogent and convincing evidence, then you will answer it Yes." By these instructions the resulting trust alleged to have been engrafted on the McNair conveyance is made to depend on the ante-

cedent question whether a trust resulted to Mrs. Lester on 11 November, 1910, upon the execution of her deed to her husband. If W. P. Lester did not hold the land in trust for his wife under her deed to him, it follows under the instructions given that he did not hold it in trust for his wife under the deed executed to him by McNair, the contention being that her money went into the purchase of the McNair property. It is evident, we think, that the circumstances attending the execution of the McNair deed are not, if considered without reference to Mrs. Lester's deed, sufficient of themselves to create a trust. The vital question, then, is this: Should the judge have excluded the evidence offered by the defendants to establish a resulting trust in favor of Mrs. Lester, the grantor, at the time she conveyed the Marlboro land to her husband?

The purpose of the statute of uses (27 Henry VIII) was to transfer the use of the land into possession, but in construing the statute the courts held that there were certain nonexecuted uses which could not be enforced at law. For the purpose of compelling performance the courts of chancery took jurisdiction of uses not executed by the statute and in this way worked out the equitable doctrine of trusts, among them those which arise by operation of law, consisting of constructive trusts and resulting trusts. *Tyndall v. Tyndall,* 186 N. C., 272. *Lord Chancellor Hardwicke,* in his classification of resulting trusts includes voluntary conveyances or conveyances made without consideration. With respect to such conveyances it was formerly held that a trust resulted to the grantor for the reason that the law would not presume a voluntary disposition of property. This was in analogy to the common law; but the rule that a trust resulted to the owner who voluntarily conveyed his land was confined to common law conveyances or assurances such as feoffments, grants, fines, recoveries, and releases which operated without consideration and vested the estate by the act itself, as by livery of seizin. By a feoffment the legal title passed to the feoffee and a use resulted to the feoffor. Lord Coke and Sir Francis Bacon said that when feoffments were made it became doubtful whether estates were in use or in purchase, and as purchases were things notorious and uses were things secret the courts of chancery thought it more convenient to require the purchaser to prove his consideration than the feoffor to prove his trust. 1 Perry on Trusts (6 ed.), secs. 124, 125, 161, 162.

But the deed from Mrs. Lester to her husband was not a feoffment. Almost all conveyances now in use are in form deeds of bargain and sale and operate to pass the legal title by virtue of the statute of uses. In conveyances of this character parol evidence is not admissible to establish a resulting trust in favor of the grantor. The principle is stated by Pomeroy: "In all the instances belonging to this first form of resulting trusts, the intention that the donee is not to enjoy the

beneficial interest, but that a trust is to result, or the contrary intention, must appear expressly or by implication from the terms of the instrument itself by which the property is conveyed. If the instrument is a will, then no extrinsic evidence is ever admissible to show the testator's meaning, nor even to show a mistake. If the instrument is a deed, no intrinsic evidence of the donor's intention is admissible, unless fraud or mistake is alleged and shown. If, therefore, there is in fact no·consideration, but the deed recites a pecuniary consideration, even merely nominal, as paid by the grantee, this statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and destroys the possibility of a trust resulting to the grantor, and no extrinsic evidence would be admitted to contradict the recital, and to show that there is in fact no consideration, except in a case of fraud or mistake." 3 Pomeroy's Equity Jurisprudence (4 ed.), sec. 1036.

Our own decisions accord with the doctrine, which in *Gaylord v. Gaylord,* 150 N. C., 222, is discussed by *Hoke, J.,* with full citation of the authorities. There, it is said, that in a deed giving on the face clear indication that an absolute estate was intended to pass, either by recital of a valuable consideration or by an express covenant to warrant and defend the title, no trust would result in favor of the grantor by reason of the circumstance that no consideration was in fact paid, and that the main current of decision is in the direction of establishing the principle that as between the parties a trust cannot be fastened on an absolute deed by evidence that the grantee paid no consideration or that he agreed to hold the premises for the grantor. As to the latter proposition it is said: "Nor do we think it permissible upon the evidence that the plaintiffs should engraft a parol trust on a deed of the kind presented here by express declaration or agreement. The seventh section of the English Statute of Frauds, forbidding "the creation of parol trusts or confidences of lands, tenements or hereditaments, unless manifested and proved by some writing," not being in force with us, and no statute of equivalent import having been enacted, these parol trusts have a recognized place in our jurisprudence and have been sanctioned and upheld in numerous and well-considered decisions. *Avery v. Stewart,* 136 N. C., 436; *Sykes v. Boone,* 132 N. C., 199; *Shelton v. Shelton,* 58 N. C., 292; *Strong v. Glasgow,* 6 N. C., 289. Upon the creation of these estates, however, our authorities seem to have declared or established the limitation that except in cases of fraud, mistake or undue influence, a parol trust, to arise by reason of the contract or agreement of the parties thereto, will not be set up or engrafted in favor of the grantor upon a written deed conveying to the grantee the absolute title, and giving clear indication on the face of

the instrument that such a title was intended to pass. *Dickenson v. Dickenson, supra; Bonham v. Craig,* 80 N. C., 224; *Jackson v. Cleveland, supra,* reported also in 90 Amer. Dec., 226, with a full and learned note on this phase of the doctrine; *Dean v. Dean,* 6 Conn., 285; *Cain v. Cox,* 23 West Va., 594, 605; *Dyer v. Dyer,* White and Tudor Leading Cases in Equity (part 1), pp. 314, 344, 354, 355, 356, etc."

On this point the following additional authorities may be consulted: *Jones v. Jones,* 164 N. C., 320; *Campbell v. Sigmon,* 170 N. C., 348; *Walters v. Walters,* 172 N. C., 328; *Chilton v. Smith,* 180 N. C., 472; *Swain v. Goodman,* 183 N. C., 531; *Blue v. Wilmington,* 186 N. C., 321.

What we have said is not inconsistent with the decision in the former appeal. In granting a new trial for error in a directed verdict, *Varser, J.,* stated that the record disclosed some evidence of a resulting trust, but the competency of evidence—certainly of the evidence in the present record—was not passed upon or discussed.

The appellees suggest that whether a resulting trust grew out of Mrs. Lester's conveyance of the Marlboro land to her husband is to be determined by the laws of South Carolina; but they produced no statute, no written law, no book of reported cases, no oral evidence in support of their position. C. S., 1749. It is the deed from McNair to Lester upon which it is now sought to engraft the trust. The asserted trust in the execution of the deed from Mrs. Lester to her husband was evidentiary—one link in the chain of evidence, presenting the question whether the admissibility of the evidence excepted to is not to be determined by the law of the forum. The land described in her deed has long since been disposed of and is not the subject of this controversy. 12 C. J., 447, sec. 27; *ibid.,* 485. On the point made by the appellees reference may be made to the following cases: *Mowry v. Stogner,* 3 S. C., 251; *Winsmith v. Winsmith,* 15 S. C., 611; *Boozer v. Teague,* 27 S. C., 348; *Kinsey v. Bennett,* 37 S. C., 319.

For error in the admission of evidence a new trial is awarded.

New trial.